IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHNNY L. BACA,

           Plaintiff,

v.                                      No. CIV-13-0154 JCH/LAM

CAROLYN W. COLVIN, Acting Commissioner
of the Social Security Administration,

           Defendant.

## PROPOSED FINDINGS AND RECOMMENDED DISPOSITION[1]

      **THIS MATTER** is before the Court on *Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 18)*, together with an attached ***Brief in Support of Motion to Reverse or Remand Decision of Commissioner*** *(Doc. 18-1)*, both filed July 24, 2013, and Plaintiff's ***Amended Brief in Support of Motion to Reverse or Remand Decision of Commissioner*** *(Doc. 19)*, filed July 26, 2013.[2]  Defendant filed a response to the motion on September 26, 2013 [*Doc. 21*], and Plaintiff filed a reply and notice of completion of briefing on October 21, 2013 and October 24, 2013, respectively.  [*Docs. 25* and *26*].  This case was reassigned to the undersigned on October 28, 2013 (*Doc. 27*), and, on October 31, 2013, United States District Judge

---

[1] **Within fourteen (14) days after a party is served with a copy of these proposed findings and recommended disposition, that party may, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(2), file written objections to such proposed findings and recommended disposition.  A party must file any objections with the clerk of the United States District Court for the District of New Mexico within the fourteen-day period allowed if that party wants to have appellate review of the proposed findings and recommended disposition.  If no objections are filed, no appellate review will be allowed.  Pursuant to Fed. R. Civ. P. 72(b)(2), a party may respond to another party's objections within fourteen (14) days after being served with a copy of the objections.**

[2] Plaintiff fails to state what was changed in his amended brief, and it is not clear to the Court how Plaintiff's amended brief is different from his original brief.  *Compare* [*Doc. 18-1*] *with* [*Doc. 19*].  Regardless, the Court will refer to Plaintiff's amended brief in this opinion since that is the brief to which Defendants responded.

Judith C. Herrera referred the claims raised in the motion to the undersigned for proposed findings and a recommended disposition, and a hearing, if necessary (*Doc. 29*). The Court has considered Plaintiff's motion and amended brief in support of the motion, Defendant's response, Plaintiff's reply, and the relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. [*Docs. 13*]. For the reasons set forth below, the Court recommends that Plaintiff's motion should be **GRANTED** and the decision of the Commissioner of the Social Security (hereinafter "Commissioner") should be **REMANDED**.

## I.  Procedural History

On March 19, 2009, Plaintiff filed an application for Supplemental Security Income (hereinafter "SSI"), alleging that he became disabled on February 1, 2004. [*Doc. 13-7* at 2-4].[3] Plaintiff stated that he became disabled due to his back being crooked and his legs which cause him to limp and use a cane, and he is in constant pain. [*Doc. 13-8* at 3]. His application was denied at the initial level on June 9, 2009 (*Doc. 13-6* at 8-11) and at the reconsideration level on September 25, 2009 (*id.* at 4-7). On November 15, 2010, Administrative Law Judge Barbara Licha Perkins (hereinafter "ALJ") conducted a hearing. [*Doc. 13-4* at 2-48]. Plaintiff was present, was represented by counsel and testified at the hearing. *Id.* at 4, 5-37. Vocational Expert Diane Weber (hereinafter "VE") was also present and testified at the hearing (*id.* at 4, 37-46).

---

[3]Even though Plaintiff's application states that he applied for SSI on April 20, 2009, the Court notes that Plaintiff, Defendant, and the Administrative Law Judge all state that Plaintiff filed his application for SSI on March 19, 2009, and that is the date used by the Administrative Law Judge as the application date in her decision. *See* [*Doc. 19* at 1], [*Doc. 21* at 1], and [*Doc. 13-3* at 15 and 17]. In addition, in Plaintiff's application, the date March 19, 209 appears repeatedly (*Doc. 13-7* at 3), and a document from the Social Security Administration states that the filing date is Mach 19, 2009, and the receipt date is April 20, 2009 (*id.* at 5). The Social Security Administration's guidance materials state that a claimant's original contact with the Administration may be used as the application filing date, so it is possible that Plaintiff contacted the Administration on March 19, 2009, even though his application states that he applied on April 20, 2009. *See* http://www.ssa.gov/ssi/text-apply-ussi.htm, last accessed November 13, 2013. Because the parties agree that Plaintiff's application date is March 19, 2009, the Court will use that date.

On October 28, 2011, the ALJ issued her decision, finding that under the relevant sections of the Social Security Act, Plaintiff was not disabled.  [*Doc. 13-3* at 15-32].  Plaintiff requested that the Appeals Council review the ALJ's decision (*id.* at 7-11), and, on February 2, 2013, the Appeals Council denied Plaintiff's request for review (*id.* at 2-6), which made the ALJ's decision the final decision of the Commissioner.  On February 15, 2013, Plaintiff filed his complaint in this case. [*Doc. 1*].

## II.  Standard of Review

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)).  If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief.  *See Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  Courts should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Hamlin*, 365 F.3d at 1214; *Langley*, 373 F.3d at 1118.

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted); *Doyal*, 331 F.3d at 760 (citation and quotation marks omitted).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence

supporting it." *Langley*, 373 F.3d at 1118 (citation and quotation marks omitted); *Hamlin*, 365 F.3d at 1214 (citation and quotation marks omitted). While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

### III. Applicable Law and Sequential Evaluation Process

For purposes of SSI, a person establishes a disability when he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process (SEP) has been established for evaluating a disability claim. 20 C.F.R. § 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the SEP, the claimant has the burden to show that: (1) the claimant is not engaged in "substantial gainful activity;" and (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and either (3) the claimant's impairment(s) either meet(s) or equal(s) one of the "Listings" of presumptively disabling impairments; or (4) the claimant is unable to perform his "past relevant work." 20 C.F.R. § 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1261. At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner

to show that the claimant is able to perform other work in the national economy, considering his residual functional capacity (hereinafter "RFC"), age, education, and work experience.  *Grogan*, 399 F.3d at 1261.

The Social Security Act provides that "[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would (but for this paragraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 423(d)(2)(C); *see also* 20 C.F.R. § 416.935.  If an ALJ finds that the claimant is disabled and has medical evidence of the claimant's drug addiction or alcoholism, the ALJ "must determine whether . . . drug addiction or alcoholism is a contributing factor material to the determination of disability."  20 C.F.R. § 416.935(a).  The "key factor" in making this determination is whether the claimant would still be found disabled if he stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(1).  A two-step analysis is required to determine whether drug addiction or alcoholism is a contributing factor material to a determination of disability.  First, the ALJ must determine which of the claimant's physical and mental limitations would remain if the claimant refrained from drug or alcohol use.  Then the ALJ must determine whether the claimant's remaining limitations would be disabling.  20 C.F.R. § 416.935(b)(2).  If the claimant's remaining limitations would not be disabling, the claimant's alcoholism or drug addiction is a contributing factor material to a determination of disability and benefits will be denied.  20 C.F.R. § 416.935(b)(2)(i).  If the claimant would still be considered disabled due to his remaining limitations, the claimant's alcoholism or drug addiction is not a contributing factor material to a determination of disability and the claimant is entitled to benefits. 20 C.F.R. § 416.935(b)(2)(ii).

## IV.  Plaintiff's Age, Education, Work Experience, and Medical History; and the ALJ's Decision

Plaintiff was born on February 26, 1963.  [*Doc. 13-7* at 2].  Plaintiff testified that he completed the tenth grade in school.  [*Doc. 13-4* at 7].  Plaintiff has worked doing groundskeeping at a restaurant (*Doc. 13-8* at 4 and *Doc. 13-4* at 8-9), as a mechanic's assistant doing maintenance for a cab company, cleaning and detailing cars, and as a "yard man" and delivery driver for a building supply company (*Doc. 13-4* at 9-14 and 20).  While he was incarcerated, Plaintiff worked cleaning rooms, doing yard work, picking up trash, and in the canteen.  *Id.* at 15-17 and 19.  Plaintiff alleges that he became disabled on February 1, 2004, and states that he is unable to work because of his back and legs; specifically that his back is crooked and he limps, uses a cane and is in constant pain.  [*Doc. 13-8* at 3].

Plaintiff's medical records document treatment and records from: UNM Hospitals (*Doc. 13-9* at 4-12 and 25-33); First Choice Community Healthcare (*id.* at 20-24); Albuquerque Healthcare for the Homeless (*Doc. 13-10* at 3-26); and UNM Psychiatric Center (*id.* at 28-30).  Plaintiff's medical records also include: a Physical Residual Functional Capacity Assessment by Margaret E. Vining, M.D., dated June 8, 2009 (*Doc. 13-9* at 37-44); a Case Analysis by J. Pataki, dated September 22, 2009 (*id.* at 48); and a Consultative Psychiatric Examination by Paula Hughson, M.D., dated February 15, 2011 (*Doc. 13-10* at 32-37).  Where relevant, Plaintiff's medical records are discussed in more detail below.

At step one of the five-step evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 19, 2009, the application date.  [*Doc. 13-3* at 17].  At step two, the ALJ found that Plaintiff has the following severe impairments: "degenerative joint disease

of the left hip; opioid dependence; post-traumatic stress disorder; a somatoform disorder; and an

anti-social personality disorder." *Id.*  At the third step, the ALJ found that Plaintiff did not have an

impairment or combination of impairments that met or medically equaled any of the Listings found

in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. § 416.920(d)).  *Id.* at 18-20.

Before step four, the ALJ determined that Plaintiff has the RFC to perform a limited range

of light work as follows: lift and/or carry no more than 20 pounds occasionally and 10 pounds

frequently; sit for no more than six hours out of an eight-hour workday with normal breaks; stand

and/or walk for no more than six hours out of an eight-hour workday with normal breaks; push and

pull with the upper and lower extremities in a manner consistent with the strength limitations stated

above; climb ramps and stairs frequently; climb ropes, ladders, and scaffolds, balance, stoop, kneel,

crouch, and crawl occasionally; reach, handle, finger, and feel frequently; no visual or

communicative limitations; avoid concentrated exposure to extreme cold, unprotected heights, and

hazardous moving machinery; and "[b]ecause of the combination of his mental impairments,

including substance abuse, [Plaintiff] lacks the ability to adjust to acceptable behavior required in

a routine work environment, including interactions with co-workers and supervisors, and the ability

to come to work on a regular basis." *Id.* at 20.  In support of the RFC finding, the ALJ stated that

Plaintiff's "testimony concerning his standing ability is not fully credible, since it is not consistent

with the record as a whole, including the objective medical findings." *Id.*  The ALJ stated that the

record does not substantiate Plaintiff's statement that he needs to use a cane for ambulation.

*Id.* at 21.  The ALJ stated that she gave "great weight" to the diagnoses and functional limitations

assessed in the consultative examination report of Dr. Hughson.  *Id.*  The ALJ gave "substantial

weight" to the evaluation by state-agency consultant, Dr. Vining, who concluded that Plaintiff can

perform medium-level work, and that Plaintiff does not need a cane to stand or ambulate.  *Id.* at 22. Ate step four, the ALJ found that Plaintiff is unable to perform his past relevant work.  *Id.*

At the fifth step, the ALJ noted that Plaintiff was 46 years old on the date his application was filed and that Plaintiff has a limited 10th grade education and is able to communicate in English. *Id.*  The ALJ stated that Plaintiff's acquired job skills do not transfer to other occupations within the RFC found above, and that, considering Plaintiff's age, education, work experience, and RFC based on all of his impairments, including the substance use disorder, there are no jobs that exist in significant numbers in the national economy that Plaintiff can perform.  *Id.* at 23.

Because the ALJ found that Plaintiff would be disabled with ongoing substance abuse, the ALJ then reconsidered steps two through five of the disability analysis, excluding Plaintiff's substance abuse as a factor.  At step two, the ALJ found that, if Plaintiff stopped the substance use, his remaining limitations would cause more than a minimal impact on his ability to perform basic work activities, and he would continue to have a severe impairment or combination of impairments. *Id.*  At step three, the ALJ found that, if Plaintiff stopped the substance use, he would not have an impairment or combination of impairments that meet or medically equal any of the Listings found in 20 C.F.R. § 404, Subpt. P, Appx. 1 (20 C.F.R. § 416.920(d)).  *Id.*  Prior to step four, the ALJ found that, if Plaintiff stopped the substance use, he would have the RFC to perform a limited range of light work as follows: lift and/or carry no more than 20 pounds occasionally and 10 pounds frequently; sit for no more than six hours out of an eight-hour workday with normal breaks; stand and/or walk for no more than six hours out of an eight-hour workday with normal breaks; push and pull with the upper and lower extremities in a manner consistent with the strength limitations stated above; climb ramps and stairs frequently; climb ropes, ladders, and scaffolds, balance, stoop, kneel,

crouch, and crawl occasionally; reach, handle, finger, and feel frequently; no visual or communicative limitations; avoid concentrated exposure to extreme cold, unprotected heights, and hazardous moving machinery; and "understand, remember, and execute simple instructions and tasks in work requiring no more than minimal interaction with co-workers and supervisors and no more than minimum contact with the public in work that is of relatively low stress and routine in nature." *Id.* at 24-25.

In support of this RFC finding, the ALJ stated that, if Plaintiff stopped the substance use, Plaintiff's "medically determinable impairments could reasonably be expected to produce the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the [ALJ's RFC] assessment." *Id.* at 25. The ALJ stated that the radiology report of Plaintiff's left hip showed no obvious acute trauma and "there was only a small ossicle or calcified body measuring about a centimeter projecting to the tip of the greater trochanter." *Id.* The ALJ stated that she was "not persuaded that [Plaintiff] has been abstinent from ongoing heroin use for more than one month during the period in question." *Id.* at 26. In support of this statement, the ALJ noted that: "[t]he assessment by Keith Haynie, CFNP on April 28, 2010 was of opioid dependence, moderate/heavy" (*id.*, citing *Doc. 13-10* at 25); the outpatient provider note by Nicole E. Moret of UNM Behavioral Adult Health dated May 19, 2010 noted that Plaintiff "has been off heroin for about one month but his visual hallucinations remained" (*Doc. 13-3* at 26, citing *Doc. 13-10* at 28); Edmundo Apodaca, LISW, ACSW of Health Care for the Homeless reported on May 25, 2010 that Plaintiff admitted using half a gram of opioids monthly, that Plaintiff's sobriety date was May 12, 2010, and that Plaintiff admitted that "he has been on Suboxone for three weeks but has relapsed three times"

(*Doc. 13-3* at 26-27, citing *Doc. 13-10* at 12 and 14-15); Tina Carlson, APRN, BC of Health Care for the Homeless reported on July 6, 2010 that Plaintiff stated that his drug of choice is opioids, which he used orally, and the ALJ stated that "the use of oral opioids is consistent with addiction and drug-seeking behavior" (*Doc. 13-13* at 27, citing *Doc. 13-10* at 8); and that Plaintiff "initially told Dr. Hughson that he was clean since he was released from prison in March 2009 but when confronted, he admitted he 'slipped' and began using heroin again" (*Doc. 13-3* at 27, citing *Doc. 13-10* at 33). The ALJ also stated that Plaintiff's statement in his Disability Report that he stopped working because he was arrested, was on drugs, and was incarcerated, and never went back to work after he got out "the 3rd time from jail," is inconsistent with his attorney's theory of the case that Plaintiff cannot work due to back and leg pain. *Doc. 13-3* at 26 (citing *Doc. 13-8* at 3). The ALJ gave "great weight" to Dr. Hughson's opinion regarding the effect of substance abuse on Plaintiff's functioning, and emphasized that Dr. Hughson did not diagnose Plaintiff with a psychotic disorder despite Plaintiff's reports of visual hallucinations. *Id.* at 27. The ALJ stated that she did "not think that Plaintiff's complaints of pain are the result of a somatoform disorder as suggested by Dr. Hughson so much as they are to obtain opioid narcotics," and that "assuming [Plaintiff] has an anti-social personality disorder as a primary mental disorder, prolonged abstinence from drug abuse would be expected to ameliorate the severity of it." *Id.* at 28. At step four, the ALJ found that, if Plaintiff stopped the substance abuse, he would continue to be unable to perform any past relevant work. *Id.*

At step five, the ALJ next found that transferability of job skills is not material to the determination of disability because, using the Medical-Vocational Rules as a framework, Plaintiff is not disabled whether or not he has transferable job skills. *Id.* The ALJ stated that she asked the

VE "whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, [and] work experience," and assuming the individual would have the RFC as set forth above if Plaintiff stopped the substance abuse, and the VE testified that such an individual would be able to perform the requirements of representative occupations such as: flatwork tier ("laundry and related, folding and categorizing"), mail room clerk, and silver wrapper. *Id.* at 28-29.  The ALJ stated that "the [VE's] testimony is consistent with the information contained in the Dictionary of Occupational Titles." *Id.* at 29.  The ALJ concluded that, "if [Plaintiff] stopped the substance use, he would be capable of making a successful adjustment to work that exists in significant numbers in the national economy." *Id.*  The ALJ, therefore, determined that the substance abuse disorder is a contributing factor material to the determination of disability because Plaintiff would not be disabled if he stopped the substance use, and, thus, Plaintiff was not disabled within the meaning of the Social Security Act. *Id.*

## V.  Analysis

Plaintiff contends that the ALJ erred by finding that Plaintiff's substance abuse was a material contributing factor to Plaintiff's disability because the ALJ improperly substituted her own opinion for the opinion of Dr. Hughson regarding whether Plaintiff would be able to work if he were to stop the substance abuse. [*Doc. 19* at 6-11].[4]  As relief, Plaintiff asks the Court to reverse or

---

[4]In Plaintiff's brief in support of his motion to reverse or remand, Plaintiff indicates he is bringing two claims and titles those claims: "A. SINCE SSR 13-2P REQUIRES THAT DRUG ABUSE BE A "MATERIAL" CONTRIBUTING FACTOR TO CLAIMANTS' [SIC] DISABILITY, IF MR. BACA'S CO-OCCUR[R]ING MEDICAL [MENTAL] CONDITION, OR THE ABILITY TO WORK, WOULD NOT BE IMPROVED BY STOPPING DRUGE [SIC] ABUSE, THEN DID THE COMMISSIONER COMMIT REVERSIBLE ERROR FINDING MATERIALITY?" and "B. SINCE THE CLAIMANT WOULD BE DENIED BENEFITS IF DRUG ABUSE AND ALCOHOLISM IS "MATERIAL" TO THE FINDINGS THAT THE CLAIMANT IS DISABLED, DID THE COMMISSIONER COMMIT ERROR BY FAILING TO GIVE CONTROLLING AND CONCLUSIVE WEIGH TO THE OPINION OF DR. PAULA HUGHSON, THAT MR. BACA WOULD CONTINUE TO BE DISABLED IF HE STOPPED USING DRUGS OR ALCOHOL?" [*Doc. 19* at 6-8].  Despite these headings, Plaintiff contends throughout his brief that the ALJ erred by
(continued...)

remand the case for a new hearing. *Id.* at 11. In response, Defendant disputes Plaintiff's contentions, and states that the ALJ's decision was properly supported by the evidence in the record, and the ALJ used correct legal standards in evaluating the evidence, so the Commissioner's final decision should be affirmed. [*Doc. 21* at 6-11].

Plaintiff contends that the ALJ substituted her own opinions for those of Dr. Hughson when the ALJ stated that she credits Dr. Hughson's statement that abstinence from drugs would only partially improve Plaintiff's ability to work because other problems would remain, but then stated that she "do[es] not think that [Plaintiff's] complaints of pain are the result of a somatoform disorder as suggested by Dr. Hughson, so much as they are to obtain opioid narcotics." [*Doc. 19* at 7] (citing *Doc. 13-3* at 28). Plaintiff contends that this statement is unsupported by any evidence in the record and that the ALJ erred by substituting her own opinion for that of Dr. Hughson. *Id.* In response, Defendant contends that the ALJ properly considered Dr. Hughson's opinion that Plaintiff's chances for full rehabilitation if he were to stop the substance abuse were limited, because Dr. Hughson found that Plaintiff's ability to work would be limited by chronic pain and the use of pain medications, and "disability requires more than the inability to work without pain." [*Doc. 21* at 10] (citing *Ray v. Bowen*, 865 F.2d 222, 225 (10th Cir. 1989)).

The findings of state agency medical or psychological consultants are not binding on an ALJ; however, they are medical opinion evidence which an ALJ must consider, except as to the ultimate determination of whether a claimant is disabled. *See* 20 C.F.R. § 416.927(e)(2)(i). In addition, an

---

[4](...continued)
substituting his opinion for that of Dr. Hughson. To the extent Plaintiff intended to bring other claims, it is not clear to the Court what those claims might be, and the Court will only consider the claim that it can decipher from Plaintiff's brief. *See Murrell v. Shalala*, 43 F.3d 1388, 1390 n.2 (10th Cir. 1994) ("[P]erfunctory complaints fail to frame and develop an issue sufficient to invoke appellate review.") (citations omitted).

ALJ cannot substitute his or her opinion for that of a physician without adequate justification. *See Winfrey v. Chater*, 92 F.3d 1017, 1022 (10th Cir. 1996). Here, the ALJ considered Dr. Hughson's opinion that abstinence would only partially improve Plaintiff's ability to work because other problems would remain; however, the ALJ rejected this finding because the ALJ did "not think that [Plaintiff's] complaints of pain are the result of a somatoform disorder as suggested by Dr. Hughson, so much as they are to obtain opioid narcotics." [*Doc. 13-3* at 28]. In support of this conclusion, the ALJ stated that Plaintiff told one of his providers at Health Care for the Homeless that Plaintiff was using oxycodone that he got from a friend." *Id.* (citing *Doc. 13-10* at 3).

The Court finds that the ALJ's justification for rejecting Dr. Hughson's opinion that abstinence would only partially improve Plaintiff's ability to work is not adequate. The record contains no other medical source opinion regarding Plaintiff's ability to work absent substance abuse, and a one-time statement recorded in a nursing visit progress note does not justify rejecting a physician's opinion contained in a consultative examination. *See Winfrey*, 92 F.3d at 1022-23 (finding that there was not adequate justification for the ALJ to reject the opinions of a physician where the ALJ did not think that the results of a certain test were an adequate basis for the physician to make a diagnosis, and the ALJ made his own determination regarding what rate of alcohol consumption should be considered excessive or abusive for the claimant), and *Zemp-Bacher v. Astrue*, No. 10-5067, 477 Fed. Appx. 492, 495, 2012 WL 1327815 (10th Cir. April 18, 2012) (unpublished) (finding that the ALJ erred in rejecting a medical source's opinion indicating numerous moderate limitations if the claimant were abstinent based only on the claimant's testimony that she was doing better since starting counseling and medication, and on treatment notes indicating some improvement, neither of which amounted to substantial evidentiary support for the ALJ's

13

conclusion).  As the Tenth Circuit stated in *Zemp-Bacher*, "no reasonable mind could find the vague bits of evidence noting some improvement enough to support a conclusion that [the claimant] would not be disabled in [the] absence of addiction."  477 Fed. Appx. at 495; *see also Carpenter v. Astrue*, 537 F.3d 1264, 1265 (10th Cir. 2008) (an ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence") (citation and internal quotation marks omitted).  Defendant's attempt to remedy the ALJ's failure to adequately justify her rejection of this portion of Dr. Hughson's opinion by supplying additional possible justifications for doing so (*see Doc. 21* at 7-10) is an impermissible *post hoc* rationalization.  *See Robinson v. Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004) (explaining that reviewing courts may only evaluate an ALJ's decision "based solely on the reasons stated in the decision," and that it would be improper for a reviewing court or the Commissioner to "supply[] possible reasons" for an ALJ's decision after the fact) (citation omitted).

For these reasons, the Court recommends that Plaintiff's motion be granted and that this case be remanded for further consideration of Dr. Hughson's opinion that abstinence would only partially improve Plaintiff's ability to work.  On remand, the Court recommends that the ALJ should carefully consider Soc. Sec. Rep. 13-2p, 2013 WL 621536 which sets forth guidance for determining whether a claimant would be disabled if substance abuse stops.  As stated in that policy, if a claimant has a mental impairment, a finding that substance abuse is not material to the determination of disability "if the record is fully developed and the evidence does not establish that the claimant's co-occurring mental disorder(s) would improve to the point of nondisability in the absence of [substance abuse]."  Soc. Sec. Rep. 13-2p, 2013 WL 621536 at *7.

## VI.  Recommended Disposition

**IT IS THEREFORE HEREBY RECOMMENDED,** for the reasons stated above, that *Plaintiff's Motion to Reverse or Remand Administrative Agency Decision (Doc. 18)* be **GRANTED** as set forth above, and the decision of the Commissioner of Social Security (hereinafter "Commissioner") be **REMANDED** for further proceedings consistent with this opinion.

*Lourdes a. Martinez*
_____
**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**